EMANUEL G. PENN, Respondent, *v.* UMBERTO VALIANTE, Appellant.

First Department, March 10, 1930.

*Herbert L. Wasserman* of counsel [*Wasserman & Erenstoft,* attorneys], for the appellant.

*Henry E. Stohldreier,* for the respondent.

O'MALLEY, J. Plaintiff has recovered a judgment predicated upon the defendant's failure to deliver certain merchandise. The defendant concedes non-delivery and seeks to justify because of plaintiff's alleged breach of an essential provision of the contract.

The agreement involved is contained in certain cablegrams. The defendant manufactures ladies' felt hats in Milan, Italy. The plaintiff deals in like products in New York city. On March 20, 1928, the defendant by cable submitted to plaintiff price quotations on white felt hats at three dollars and ninety cents per kilogram. On April third the plaintiff cabled his offer to purchase 10,000 kilograms at the price quoted and gave terms of shipment and payment. He demanded shipment should commence *at the latest by the end of April* and be completed by May tenth. In payment he offered immediately to open in Italy a letter of credit authorizing the defendant to draw twenty per cent of the purchase price, balance to be paid in cash against documents in New York thirty days after arrival of merchandise. On April fourth the defendant submitted a counter offer which provided for completion of shipment by May twentieth and for modification of the letter of credit so as to authorize the defendant to draw at sight in Italy one dollar per kilogram, balance to be paid in cash against documents in New York within thirty days. In reply the plaintiff cabled as follows: " Letter of credit opened credito Italiano four thousand kilogram in terms of referring to your telegram of today balance six thousand kilogram will open letter of credit latest April 20th stop depending upon executing order fully stop thirty per cent seventy grams and seventy per cent eighty grams."

The cable last quoted effected a valid contract between the parties and their rights depend upon the proper construction of the language of this cable.

The plaintiff opened the first letter of credit. The issue presented is whether he was obligated to open the second letter before the defendant had shipped the 4,000 kilograms covered by the first letter. Concededly, the second letter was not opened, and because of plaintiff's failure to comply with this provision of the contract, the defendant asserted the right to refuse to make further deliveries. As a result he shipped only 1,300 dozen covered by the first letter of credit and made no further shipments under the contract.

The learned trial justice has construed the contract to mean that the plaintiff was under no obligation to open the second letter of credit until the defendant had made full shipment of the first 4,000 kilograms. In reaching this conclusion we are of opinion that the court overlooked an important phase of the final cable that passed between the parties. As we read it there was imposed upon the plaintiff an absolute obligation to open the second letter of credit on or before April twentieth. Plaintiff's promise to " open letter of credit latest April 20th " is followed by a period, the word " stop "

being conceded to so indicate. The words "depending upon executing order fully" are also followed by a period and in our view were injected, not as a condition precedent to plaintiff's opening the second letter of credit, but simply as an expression of hopefulness that defendant would fully execute the order. There is evidence tending to show that the plaintiff's agent who carried on the negotiations on his behalf had experienced some difficulties in securing the fulfillment of previous orders placed with the defendant. This fact is sufficient explanation for the insertion in the cable of the sentence referred to.

It is to be noted, too, that under the contract as finally consummated, the defendant was not required to begin shipment of any part of the first installment until the end of April. Plaintiff himself testified that shipment of any part of the first order, however small, within the times specified, would have been compliance with the contract. This being so, it is difficult to perceive how plaintiff could have expected full shipment of the 4,000 kilograms before he had opened the second letter of credit, which by the plain terms of the agreement was required to be opened by April twentieth at the latest.

Subsequent cable and written correspondence passing between the parties merely serve to justify the construction we here make. Under date of April ninth, the defendant cabled plaintiff that he was mailing samples and that shipment of part of the first order would go forward by April twenty-second. In this cable the defendant further requested plaintiff to "provide for second letter of credit." On the following day plaintiff cabled as follows: "Letter of credit balance whites opening on or before April 20th stop On receipt of sample will open additional letter of credit for whites."

Plaintiff's position as disclosed in this cable might be regarded as somewhat equivocal. First, there is the assurance that the letter of credit will be opened on or before April twentieth, but the cable ends with the statement that it will be opened "On receipt of sample." This is the first indication from the plaintiff that he was not obligated to open the letter of credit as provided for in the final cable of April fourth, and his position, now taken, is that he will open the letter on receipt of sample and not that he will delay such action until complete shipment of the 4,000 kilograms.

On April nineteenth defendant cabled as follows: "On account wool delivery shipment will be delayed one week telegraph referring second letter of credit because must buy wool which is useless for other goods * * *."

The defendant's position in this cablegram and as asserted on the

trial was that it was necessary for him to have opened both letters of credit in order that he might be in a position to purchase the necessary wool to make up the merchandise, and that it would have been impossible for him to have contracted for the delivery of the goods unless he had assurance that he would be in a position to draw to the extent of one dollar a kilogram upon the whole shipment.

On the same date the plaintiff cabled the defendant and for the first time indicated his unwillingness to open the letter of credit until full shipment of the first 4,000 kilograms. Under date of April twenty-fourth the defendant again cabled plaintiff to ascertain whether " letter of credit is sure this week." On the following day the plaintiff cabled that he still expected " to be able to open letter of credit shortly waiting commencement of season," and further stated that he would positively open the letter " on arrival of samples or if samples lost on arrival first shipment."

There was further correspondence between the parties whereby the first letter of credit was extended by the plaintiff to May twenty-fifth, and under date of May tenth the plaintiff again cabled his hope " to be able to positively open balance letter six thousand full letter of credit end of month."

In the meantime, of course, the plaintiff was complaining about shipments under the first letter of credit and had threatened the defendant with the consequences of legal action unless complete shipments thereunder were made, and also complained about the quality of some of the goods that had been received. To this the defendant replied that he was not apprehensive of legal action and asserted that at all times the goods shipped were of the quality required by the contract.

However, in the view we take of the case it is unnecessary to consider this issue or any of the other questions raised. We think there was a clear breach of the contract on the part of the plaintiff.

It follows that the judgment should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., MERRELL, MARTIN and PROSKAUER, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.